555 A.2d 1299

**Willa E. WHITE**

v.

**J. Nevin WHITE, Appellant.**

Superior Court of Pennsylvania.

Argued Dec. 6, 1988.

Filed Feb. 24, 1989.

Reargument Denied April 5, 1989.

Albert Momjian, Philadelphia, for appellant.

Richard C. Snelbaker, Mechanicsburg, for appellee.

Before WIEAND, OLSZEWSKI and TAMILIA, JJ.

TAMILIA, Judge:

This is a timely appeal by defendant J. Nevin White of a Decree in divorce and Order incorporated therein providing for equitable distribution of the marital property, awarding appellee attorney's fees and costs, and denying appellee alimony. On appeal, appellant contests the trial court's distribution of marital property and award of attorney's fees.

The parties were married on November 23, 1946. During the course of their marriage they had two children, both of whom are emancipated adults. The parties separated on June 2, 1970 and have not resided together since that date. Appellee Willa E. White filed a complaint in divorce on December 24, 1981, alleging grounds for divorce pursuant to 23 P.S. § 201(d) of the Divorce Code, 23 P.S. § 101 *et seq.* Eleven hearings were held before a master during 1985 to resolve appellee's claims for equitable distribution, alimony pendente lite, alimony and counsel fees and costs. Timely exceptions to the master's report and recommendations were filed by both parties. After review of the exceptions, the trial court upheld the master's finding with the exception of the valuation of appellant's one-fourth interest in timberland located in Centre County, which the trial court concluded required an increase in the cash distributive award to appellee of $10,140 (Slip. Op., Hoffer, J., 4/6/88, p. 6). This appeal followed.

Appellee was born on March 26, 1926, making her 60 years old at the time of the master's report and 62 years old at the time of the appeal. The family unit remained intact

for the first 24 years of the marriage, with appellee working in appellant's lumber business without remuneration for the last 14 years prior to their separation in 1970, in addition to her being a homemaker. She has a high school education with little training and is suffering from a series of serious and chronic health problems which will prohibit any future gainful employment. Appellee has remained in the marital home since separation, receiving monthly spousal support by court Order in the amount of $2,100.

Appellant was born on October 25, 1925, making him 61 years old at the time of the master's report and 63 years old at the time of this appeal. Appellant is the sole stockholder and owner of J. Nevin White Lumber Company, Inc. (hereinafter "White Lumber"), and earns a salary of $53,000 per year, plus substantial fringe benefits. The trial court did not disturb the master's finding that the value of the company as of the date of the divorce was $2,735,000. Appellant also has a disputed interest in a Bermuda Corporation known as White Timber, Ltd., which was established and is controlled by a trust created by appellant's aunt in Bermuda in 1976. White Timber, Ltd., is a foreign income sales corporation or FISC, designed to defer or avoid United States income taxes for the sale of domestic lumber produced by appellant's lumber company in the international market.

The trial court made the following distribution of marital property after largely upholding the findings of the master:

APPELLEE

| Description | | Value or Amount |
|---|---|---|
| Marital home | | $ 110,000.00 |
| Household goods and furnishings | | 3,138.00 |
| Joint securities | | 25,761.16 |
| Individually owned life insurance policy | | 46,334.90 |
| Bethel Isle, Florida lot | | 85,000.00 |
| Veromer, Florida lot | | 52,000.00 |
| Individual securities | | 13,862.38 |
| Cash distributive award | | 1,662,990.00 |
| | Total | $1,999,086.44 |

APPELLANT

| | | |
|---|---|---|
| Timberland, Centre County | | $ 694,500.00 |
| Timberland, Juniata County | | 60,000.00 |
| Swiss francs | | 15,000.00 |
| White Lumber capital stock | | 2,735,000.00 |
| Joint bank account | | 3,728.34 |
| Two cemetery lots | | 120.00 |
| | Total | $3,508,348.34 |

In connection with the cash distributive award of $1,662,-990, the trial court directed it be paid in equal quarterly installments over a ten-year period from the date of the divorce decree with interest at a rate of seven percent per year. This would make appellant's payments approximately $57,803 per quarter or $231,214 per year. As security for the cash award, the trial court directed appellant to have White Lumber issue a note payable to appellee for the full amount of $1,662,990 with appellant's personal and individual guarantee on the note. Additionally, appellant is to give appellee a first mortgage lien on appellant's timberland in Centre County and Juniata County, as well as pledge 50 per cent of the capital stock of White Lumber as security for the obligation. The trial court determined that because of the large equitable distribution award appellee was not entitled to alimony, 23 P.S. § 501(a)(1), but it did award appellee $24,000 in legal fees and expenses and $2,000 in court costs.

Appellant's first claim is that the trial court erred in determining the equitable distribution award by failing to consider that the amount of the cash distributive award to appellee will allegedly force appellant to liquidate his business and consequently cause White Lumber to incur adverse tax consequences. Appellant argues the inevitable deflation in value a liquidation sale produces, plus the brokerage costs of selling and adverse tax consequences such a sale would result in, will substantially and unjustly decrease appellant's share of the marital assets distributed without affecting appellee's share.

In evaluating an equitable distribution scheme, our scope of review is limited. An appellate court will not reverse an Order determining equitable distribution absent an abuse of discretion by the trial court. *Johnson v. Johnson,* 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Campbell v. Campbell,* 357 Pa.Super. 483, 516 A.2d 363 (1986); *Bold v. Bold,* 358 Pa.Super. 7, 516 A.2d 741 (1986).

Appellant repeatedly argues the master and trial court "ignored" and "overlooked" the alleged forced liquidation and tax consequences involved in a cash award to appellee, and appellant argues the trial court is "silent" as to liquidation or the manner in which appellant should pay appellee the yearly payments of the cash award (appellant's brief at 14–16, 18–20 and 23). Moreover, appellee relies on our holding in *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986), that a cash award to one spouse was not an abuse of discretion and was amply justified by the trial court's rationale under the circumstances despite an allegation the award would force a liquidation of the paying spouse's business holdings. Appellant argues that unlike the *Morschhauser* court, the present trial court failed to address the liquidation issue in its Opinion, leaving a fatal absence of any supporting rationale as to how the cash award could be paid by appellant. After review of the record, we agree.

The Pennsylvania Supreme Court recently addressed the tax consequences or liability in equitable distribution in *Hovis v. Hovis,* 518 Pa. 137, 141–44, 541 A.2d 1378, 1380–81 (1988), where the Court stated:

This case represents the classic quandary that confronts our trial courts regarding the issue of potential tax liability as it effects the equitable distribution of property. If a taxable event such as a sale or other transfer of property is required by the award of equitable distribution, or is certain to occur shortly thereafter, the tax liability of the parties can be reasonably ascertainable. However, where there is merely a likelihood or possibility

that a taxable event will occur, the court is left to speculate as to the tax consequences.

. . . .

In order to insure a "fair and just determination and settlement of property rights" we favor predictability over mere surmise in the valuation and distribution of marital property after divorce. Accordingly, we hold that potential tax liability may be considered in valuing marital assets only where a taxable event has occurred as a result of the divorce or equitable distribution of property or is certain to occur within a time frame such that the tax liability can be reasonably predicted.

(Footnote omitted.) The liquidation of White Lumber is a taxable event and with ten partial liquidations foreseeable to provide the funds for payment of the award, the calculation of tax consequences as to these liquidations, in whole or in part, can be readily predicted.

As stated before, appellee alleges this case is positively disposed of by the holding in *Morschhauser, supra,* while appellant would find it is distinguishable from the instant case. In *Morschhauser,* the trial court considered and appropriately dealt with that issue, which we recognized in rejecting the claim that liquidation of the business would be required and the husband would suffer adverse tax consequences. There, we said:

The final claim made by appellant is that the court erred in requiring an immediate payment of the entire equitable distribution award, in the amount of $127,-641.25. He contends this will force him to liquidate his business holdings or suffer adverse tax consequences.

The court directly addressed this argument and determined appellant could produce part of the sum from his annual income, (gross income was found to be approximately $155,000.00) with the remainder obtained through a bank loan or by reaching some accomodation [sic] with appellee/wife. The court did not agree with appellant's

contention that the measures he claims are necessary are actually required to meet this obligation.

The court also upheld the immediate payment because the alimony award was based on the wife having a large amount of investment capital to produce income. If the payment of the distribution amount was spread out over time, appellant would be required to pay interest, the same as if he obtains a bank loan to pay appellee.

We find no abuse of discretion by the court in reaching this determination. The rationale provided by the court is sufficient to justify the action.

*Id.* 357 Pa.Super. at 346, 516 A.2d at 16.

The financial structure, business enterprise, distribution award, earnings and consequences of the award in the present case are radically different from those in *Morschhauser.* There, it was reasonably determined liquidation was not required to affect distribution. Here, it appears unavoidable and, therefore, presents a taxable event. This Court in *Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012 (1987), held the court must consider tax consequences on equitable distribution. Amendments to the Divorce Code, filed February 12, 1988, require the court to undertake such consideration. Section 401(d)(10), as amended, states the court shall consider:

> The economic circumstances of each party, *including Federal, State and local tax ramifications,* at the time the division of property is to become effective.

(Emphasis added.) While appellee contends it may be inferred the trial court undertook this consideration, our review of the record does not support such a view or, if it was considered, the conclusions drawn from the facts were erroneous. There is nothing in the record which supports the court's findings or proposal by appellee that appellant, whose present gross earnings are $52,000 per year, can generate an additional $240,000 a year income by harvesting and selling timber already possessed by White Timber to meet the distribution schedule. Also despite the fact that the Bermuda trust is alleged to have yearly sales of

$2,000,000, again there is no evidence as to the amount of income this generates and as to how much appellant is legally able to take in income or profits, even assuming the trust was created for the purpose of putting assets and profits beyond the reach of the wife.

This appears to be a situation in which the marital property is in assets which lack liquidity of funds available for distribution. The court's solution to value the assets, apportion them between the parties and impose the burden on appellant through harder work, loans or sell offs over ten years, to produce the wife's share has failed to take into account this cannot be accomplished without a total or gradual liquidation or heavy loans, which are likely not to be available since the property is also liened with the wife's security for payment. With liquidation, because of the low-cost value of the acquisition of the marital property, tax consequences will be severe and entirely borne by the husband. Partial liquidation may seriously reduce the capacity of the business to continue to function, as it would appear that for a lumber business to function, it must continually seek out new timber assets to assure continued operation, rather than liquidate those assets to bring about a large short range cash flow.

We, therefore, find that failure to consider tax consequences in this case results in a severe imbalance in equitable distribution and such a distribution must be made with tax consequences in mind, or another form of distribution devised, whether it be in kind, notes, etc.

■ Next, appellant argues the trial court abused its discretion in assigning a constructive interest to appellant in the trust which established the Bermuda Corporation, White Timber, Ltd. Section 401(d)(8) of the Divorce Code, 23 P.S. § 401(d)(8), provides "[t]he value of property set apart to each party" is a valid consideration in equitable distribution. In discussing the appellant's interest in the trust in its review of the award, the trial-court gave little weight to appellee's version of the interest held:

Defendant's beneficial interest, while not capable of being quantified, was amply demonstrated in the record by extensive testimony concerning his numerous trips to Bermuda, some two hundred out-of-country telephone calls concerning the trust, and approximately $2,000,000 in sales to Bermuda by defendant's company. Defendant's obvious reluctance to be forthright about the Bermuda trust was also properly weighed by the Master in arriving at his decision.

(Slip Op. at 7.) Because of the inability to quantify the interest in a dollar amount, we find this was not an abuse of discretion. It goes without saying that we cannot permit a party to siphon off profits and assets which are part of a going concern, construed to be marital property, by passing them through a foreign trust.

Lastly, appellant claims the court abused its discretion in awarding appellee counsel fees of $24,000 plus $2,000 court costs in view of the disposition of the equitable distribution of the marital assets. In determining the propriety of an award of counsel fees an appellate court should employ an abuse of discretion standard. *Vajda v. Vajda*, 337 Pa.Super. 573, 487 A.2d 409 (1985); *Semasek v. Semasek*, 331 Pa.Super. 1, 479 A.2d 1047 (1984), reversed on other grounds, 509 Pa. 282, 502 A.2d 109 (1985). The fact that appellee received support and appellant controlled the business and its assets demonstrates the parties did not litigate this action on equal footing and, as found by the master, appellant employed uncooperative and delaying tactics throughout the proceedings before him. Fee awards are meant to equalize the parties' economic positions in conducting the divorce action. *Hoover v. Hoover*, 288 Pa.Super. 159, 431 A.2d 337 (1981). In *Chaney v. Chaney*, 343 Pa.Super. 77, 493 A.2d 1382 (1985), we found that even though one spouse received a disproportionate share of the marital property in an equitable distribution award this did not preclude an award of attorney's fees. However, in view of the fact this case must be remanded for further hearings and determinations as to the effect of tax consequences on

the distribution of the marital property, it is also appropriate to have a redetermination of counsel fees as reflecting the respective awards made to each party.

Accordingly, we affirm the determination of the value of the property subject to equitable distribution, the percentage of the marital property awarded to each part and the creation of a constructive interest in the Bermuda trust in the wife, but vacate the Order of distribution and the Order as to counsel fees and court costs and remand for a determination by the trial court of the effect of tax consequences in a final award of distribution.

Jurisdiction relinquished.