519 A.2d 1012

**Helen K. DIAMOND**

v.

**Spero G. DIAMOND and S.G. Diamond, Inc., Appellants.**

Superior Court of Pennsylvania.

Argued June 24, 1986.

Filed Jan. 9, 1987.

102

104

■■■■■■■■■

■■■■■■■■■

■■■■■■

■■■■■■■■■■
■■■■■■■■■■
■■■■■■■■■■

Howard B. Krug, Harrisburg, for appellants.

Delano M. Lantz, Harrisburg, for appellee.

Before WIEAND, BECK and WATKINS, JJ.

BECK, Judge:

This appeal raises certain basic questions which must be addressed in formulating a plan of equitable distribution. The first question is what property is included in the marital estate; what is the value of each asset in the marital estate. Subsumed under this question is the date on which each marital asset will be valued. The second question relates to the division of the marital estate between the husband and wife. And the third question relates to alimony, costs, and attorneys' fees. The appellant is husband Spero G. Diamond [1] and appellee/cross-appellant is wife Helen K. Diamond. They both appeal the court's denial of their exceptions to the plan for equitable distribution of marital property. We affirm.

The parties married in September 1958, and separated in January 1975. Prior to the marriage husband was a partner in a family real estate development and construction firm. In September 1957, the business was incorporated in its present form, S.G. Diamond, Inc., and husband was

1. There are actually two appellants involved in this appeal: the individual Spero G. Diamond and the corporation S.G. Diamond, Inc. For the purposes of this appeal they are essentially one entity. Although dealings in the marital property were under the umbrella of the corporation, it is clear that the assets were marital assets. As the lower court observed, husband and the corporation were as inseparable as Ahab and the white whale at the conclusion of Moby Dick.

issued one hundred percent of the stock. Throughout the marriage and the period of the parties' separation, husband was the sole owner of the company.

Before the parties' separation in 1975, the corporation acquired substantial real estate assets, all in the name of the corporate entity. Prior to separation both parties had contributed equally to the business. Husband owned and operated the company, while wife in addition to maintaining the marital home and being the primary caretaker of the children, was actively involved in the business which was located in the marital home. After separation husband continued to conduct the business, improve properties purchased prior to the parties' separation and acquire new ones.

Wife filed a complaint in divorce [2] and requested equitable distribution of the parties' marital property, alimony, alimony pendente lite, counsel fees, costs and expenses. Hearings were held before the master almost nine years after the date of separation. The trial court adopted the master's recommendations, and in its amended decree of divorce, it directed the equitable distribution of the parties' marital property as follows: [3] husband was ordered to transfer one-half of the outstanding shares of the stock of S.G. Diamond, Inc. to wife, with the provision that the corporation would redeem the stock from wife in exchange for title to the marital home and a corporate note in the amount of $225,000. The principal on the note was to be paid within five years with interest payable at ten percent (10%) per annum. The trial court also endorsed the master's report in denying wife's claims for alimony, counsel fees, costs and expenses.

Before addressing the parties' numerous contentions, we note that an appellate court may reverse an order determining equitable distribution of marital property only for an

2. This appeal is governed by the Divorce Code ("Code"), Act of April 2, 1980, P.L. 63, Pa.Stat.Ann. tit. 23, §§ 101–801 (Purdon, Supp.1986).

3. The master valued the marital estate at $556,629 and recommended that it be divided equally between the parties.

abuse of discretion by the trial court. *Winters v. Winters,* 355 Pa.Super. 64, 512 A.2d 1211 (1986); *Sergi v. Sergi,* 351 Pa.Super. 588, 506 A.2d 928 (1986); *LaBuda v. LaBuda,* 349 Pa.Super. 524, 503 A.2d 971 (1986); *Baraff v. Baraff,* 338 Pa.Super. 203, 487 A.2d 925 (1985). Under this standard, we do not usurp the hearing court's duty as fact finder. Rather, we apply the legislative guidelines of the Code, to the record to determine whether or not the hearing court has abused its discretion. *Sergi,* 351 Pa.Super. at 591, 506 A.2d at 930; *Barnhart v. Barnhart,* 343 Pa.Super. 234, 494 A.2d 443 (1985).

This court has recently stated that "[a]n abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence.... However, an abuse of discretion will be found by this court if the trial court failed to follow proper legal procedure or misapplied the law." *Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985); *see also Sergi,* 351 Pa.Super. at 591, 506 A.2d at 930. With this standard of review in mind we turn to the claims raised by the parties.

## I.

The first series of issues centers on what is marital property, what is the value of each asset in the marital estate and the date on which each marital asset will be valued.

Section 401(e) of the Code defines marital property as:

(e) ... all property acquired by either party during the marriage *except:*

(4) *Property acquired after separation* until the date of divorce....

Pa.Stat.Ann. tit. 23, § 401(e)(4) (Purdon, Supp.1986) (emphasis added).

## A

We will begin by examining three assets which were acquired after the parties separated: husband's residence

on Butler Street; a sales agreement for Beaufort Ridge; and equity in property at Mercy Crest.

Wife argues that the Butler, Beaufort and Mercy Crest properties should be considered marital property and directs our attention to Section 401(f) of the Code:

*All property,* whether real or personal, *acquired by either party during the marriage is presumed to be marital property* regardless of whether property is held individually or by the parties in some form of co-owner-ship.... The presumption of marital property is over-come by a showing that the property was acquired by a method listed in subsection (e).

Pa.Stat.Ann. tit. 23, § 401(f) (Purdon, Supp.1986) (emphasis added).

Wife argues that Section 401(f) mandates a broad, com-prehensive definition of marital property. Consequently, she maintains that in order to meet the requirements of Section 401(e)(4) and thereby rebut the Code's presumption of marital property, the husband must show not only that the three properties at issue were acquired after the parties separated, but also that the husband did not use marital assets to obtain them. We cannot accept wife's reading of the statute.

■ We are aware that in enacting the Divorce Code the Legislature's expressed purpose was to "effectuate econom-ic justice between parties who are divorced," and that we must consider this legislative intent in construing the provi-sions of the act. Pa.Stat.Ann. tit. 23, §§ 102(a)(6), (b) (Pur-don, Supp.1986). Nonetheless, we must also adhere to established principles of statutory construction which dic-tate that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit." The Statutory Construction Act of 1972, 1 Pa.Con.Stat.Ann. § 1921(b) (Purdon, Supp.1986); *construed in Zimmerman v. O'Ban-non,* 497 Pa. 551, 442 A.2d 674 (1982). Moreover, a court cannot insert words into a statutory provision where the Legislature has failed to supply them. *See Worley v.*

*Augustine,* 310 Pa.Super. 178, 456 A.2d 558 (1983); *Peabody v. Tucker,* 4 Pa.Commw. 609, *aff'd,* 447 Pa. 398, 289 A.2d 438 (1972); *see also Patton v. Republic Steel Corp.,* 342 Pa.Super. 101, 492 A.2d 411 (1985).

Section 401(e)(4) of the Code explicitly provides that a showing that "property [has been] acquired after separation" is sufficient to counter the presumption of marital property contained in Section 401(f). This court has recently articulated the principle that "[t]ime of acquisition is the factor that the Legislature mandates the courts' use in determining whether property is a marital asset." *Anthony v. Anthony,* 355 Pa.Super. 589, 594, 514 A.2d 91, 93 (1986). Indeed, the date of separation has repeatedly been identified as the pivotal event, the end point of the period in which marital assets may be acquired. *Sergi,* 351 Pa.Super. at 591, 506 A.2d at 930; *LaBuda,* 349 Pa.Super. at 532, 503 A.2d at 976; *Hurley v. Hurley,* 342 Pa.Super. 156, 492 A.2d 439 (1985); *Braderman,* 339 Pa.Super. at 196, 488 A.2d at 618; *King v. King,* 332 Pa.Super. 526, 481 A.2d 913 (1984).

■ Contrary to the wife's assertion, Section 401(e)(4) does not place an additional burden on a party attempting to rebut the Code's presumption of marital property, i.e. it is not necessary to present rebuttal proof that no marital assets were used to obtain post-separation assets. We also decline to insert such a requirement into the unambiguous wording of the statute. This court may not under the guise of construction intrude upon the exclusive province of the Legislature. *See Peabody,* 447 Pa. at 404, 289 A.2d at 441.

We are not concerned that assets in the marital estate used for post-separation acquisitions will not be calculated as marital property. It is clear that assets in or to which the marital estate is entitled at the time of separation are includable as marital property. It is, therefore, irrelevant in determining the marital estate that those assets are later used in post-separation acquisitions. *Anthony,* 355 Pa. Super. 589, 514 A.2d 91.

■ Nonetheless, we must add to our discussion the established principle that the time a spouse actually receives an asset is not controlling as to whether the asset is marital property. The crucial time is when the right to receive the asset actually accrues. As this court has stated:

[I]t matters not when a spouse *receives* property, but whether the right to receive such property *accrues* during the marriage. To the extent that a property right "accrues" or "arises" during the marriage, then the spouses expect they will enjoy the property when they receive it.

*LaBuda*, 349 Pa.Super. at 533, 503 A.2d at 976 (emphasis added) (lump-sum retirement payment accrued prior to separation but received after separation properly included as a marital asset); *cf. Hurley*, 342 Pa.Super. at 161, 492 A.2d at 442 (personal injury damages not marital property where claim arising during marriage was unliquidated until after separation).

The record in this case supports the trial court's decision to exclude the Butler, Beaufort and Mercy Crest properties from the marital estate. Wife merely asserts that husband failed to show that the assets were not acquired by using marital funds. We therefore conclude that the trial court acted properly in identifying these three properties as the husband's separate property.

### B

Also in dispute is post-separation property located in Ventnor, New Jersey that the husband obtained by inheritance. Husband argues that he inherited the Ventnor property from his mother after separation and this it is not marital property. We agree and point out that the court classified the Ventnor property as a separate property. Pa.Stat.Ann. tit. 23, § 401(e)(4) (Purdon, Supp.1986). The court included the property in the husband's separate estate. Because the Ventnor property increased the value of the husband's separate estate, the court awarded wife a greater share of the marital estate.

■ We find the wife's contention that she is entitled to share in the property meritless. Wife maintains that prior to separation husband's mother had orally agreed to sell the property to the parties, but that the mother later devised it to her son. Wife claims that she had acquired an interest in the asset by expending substantial time and effort to improve it in reliance upon the agreement. The wife's theory of ownership is unsupported in the record and in law. We, therefore, find correct the court's disposition of the Ventnor property.

## C

During marriage the parties acquired a property known as East Elmwood on which the husband constructed an apartment building after the parties separated. The court valued this property at $12,000, as of the date of separation. At that time the property was unimproved land. Wife contends that the court erred in depriving the marital estate of the increase in value due to the post-separation construction of the apartment building. The wife's expert testified that the apartment building increased the value of the property to $160,000.

■ We conclude that the construction of the apartment building is such a substantial change that it must be considered a new asset acquired after separation. The mere fact that the building is located on land which is marital property, does not convert the building itself into a marital asset.

We cannot establish a hard and fast rule that will provide clear standards as to the nature and degree of change necessary for property to be considered a separate post-separation acquisition. The trial courts will have to make this determination on a case-by-case basis. It is clear, however, that an unimproved lot is different from and separable from a lot with an apartment house. By analogy, a sculptor's clay may be a marital asset, but the statue the sculptor crafted from the clay may not be a marital asset if her artistic work was done after separation. Accordingly, we

find that the trial court was correct in excluding the apartment building from marital property.

## D

The second marital property on which husband made post-separation improvements is the Sherwood Forest land. Prior to separation, this property consisted of six acres of unimproved land. After separation husband subdivided the land and built roads; he also constructed houses on three lots.[4]

The court correctly concluded that like the East Elmwood apartment building, the three homes are such a substantial improvement of the property that they constitute the acquisition of post-separation assets. Therefore, Section 401(e)(4) mandates that the homes be defined as separate property; and not valued in the marital estate.

The improvements to the remaining Sherwood Forest land were not extensive. The increase in value due to subdivision of the acreage and building roads does not amount to the acquisition of a new, distinct asset which must be defined as separate property. Therefore, the court properly characterized the remaining land as marital property.[5] The court valued the remaining Sherwood Forest land as of the time of separation.

At issue is whether the court abused its discretion in valuing the remaining Sherwood Forest land on which no major improvements were made as of the date of separation. Although the Divorce Code establishes the date of separation as the demarcation point to identify marital

---

4. The Master referred to this property as "Tract 2" which included the lots that are the subject of wife's claim: Nos. 45–48, 61, 73, 51, 53 and 88. (Record at 12a, 30a).

5. Husband claims that lots 50, 53 and 88 in Sherwood Forest were incorrectly characterized as marital property, and that the entire value of these lots should have been excluded from equitable distribution under Section 401(e)(5) because they were sold prior to the commencement of the divorce action in 1981. He failed however to raise this issue in his exceptions to the Master's Report, and as a result it is waived. *Dech v. Dech,* 342 Pa.Super. 17, 24 n. 10, 492 A.2d 41, 44 n. 10 (1985); *Rosen v. Rosen,* 328 Pa.Super. 93, 476 A.2d 470 (1984).

property, it does not specify the time at which the marital assets must be valued. The choice of a date of valuation is therefore left to the sound discretion of the trial court. As this court has stated:

[W]e do not attempt ... to establish a valuation to be used in every situation. To recognize a specific valuation date as a matter of law would deprive the trial court of the necessary discretion required to effectuate economic justice.

*Sergi*, 351 Pa.Super. at 594, 506 A.2d at 932, *Winters*, 355 Pa.Super. at 69–70, 512 A.2d at 1214.

The record supports the court's conclusion that the increase in value was attributable, inter alia, to the husband's post-separation efforts. We, therefore, conclude that the court did not abuse its discretion in establishing the valuation date as the date of separation.[6]

## II.

The next set of issues husband raises relates to the trial court's almost equal division of the marital property and the weight accorded to various factors in the distribution allocation. Husband maintains the trial court abused its discretion. We find meritless husband's arguments that: the court incorrectly valued properties other than those discussed *supra* at the date of hearing; the court failed to take into account the tax consequences to husband of the distribution; the court improperly weighed the witnesses' testimony; the court neglected to consider husband's avail-

---

**6.** Husband contends that corporation liabilities incurred post-separation are joint liabilities reducing the value of marital property subject to equitable distribution. He maintains that the increase since separation in a blanket mortgage and the corporation's accounts payable relate to marital properties. The record, however, demonstrates that the increase in these liabilities resulted from post-separation acquisitions and improvements already discussed which the trial court deemed to be non-marital assets. (Record at 525a, 420–425a, 503–504a, 442a, 468a, 505a–507a). Because these were post-separation liabilities, they were correctly excluded them from the value of the marital estate. *Cf. Duff v. Duff,* 510 Pa. 251, 253, 507 A.2d 371, 373 (1986) (joint tax liability imposed after separation but arising prior to separation should be charged against marital estate).

able income; and the court made inconsistent and unsupported findings of fact regarding husband's ability to acquire capital assets and income and made unsupported findings regarding the pre-marital value of the corporation.

## A

We find the court did not err in valuing certain property as of the date of hearing. The husband argues that because his efforts resulted in the increase in value, the separation date was the proper date for valuation.

■ We have examined the record and conclude that the court considered husband's post-separation efforts in its distribution of the marital property. Thus, the court properly considered:

(7) *The contribution* or dissipation *of each party in* the acquisition, *preservation, depreciation or appreciation of the marital property,* including the contribution of a party as a homemaker.

Pa.Stat.Ann. tit. 23, § 401(d)(7) (Purdon, Supp.1986) (emphasis added).

Although the husband's contribution weighs in favor of establishing valuation at separation date, that one factor alone does not determine the proper date. The court also gave weight to the fact that husband would have the "opportunity for future acquisition of capital assets in light of his business expertise." (Record at 7a). Thus, the court properly considered another important factor:

(5) The opportunity of each party for future acquisitions of capital assets and income.

Pa.Stat.Ann. tit. 23, § 401(d)(5) (Purdon, Supp.1986). While husband may disagree with the relative weight the court chose to accord to the husband's contribution and the future financial prospects of the parties, the court did not abuse its discretion. It properly considered the factors provided in section 401(d) of the Code. As this court has previously noted:

[T]here is no simple formula by which to divide marital property. The method of distribution derives from the facts of the individual case. The list of factors of 401(d) serves as a guideline for consideration, although the list is neither exhaustive nor specific as to the weight to be given the various factors. Thus, the court has flexibility of method and concomitantly assumes responsibility in rendering its decisions.

*Semasek v. Semasek,* 331 Pa.Super. 1, 11, 479 A.2d 1047, 1052 (1984); *rev'd on other grounds,* 509 Pa. 282, 502 A.2d 109 (1985).

The master correctly valued each asset separately and properly considered the 401(d) factors in making distribution. In equitably distributing a complex marital estate, the master must be permitted flexibility in order to do economic justice.

### B

██ We are also not persuaded by husband's argument that the trial court failed to consider the tax consequences of the award. Although Section 401(d) of the Code does not specifically identify tax consequences as a factor in equitable distribution; *see* Pa.Stat.Ann. tit. 23, § 401(d) (Purdon, Supp.1986), it is necessary in distributing assets of a marriage to take into account the impact of the tax laws. The husband correctly asserts that potential tax burdens should be considered in order to "[m]ake the law for legal dissolution of marriage effective for dealing with the realities of matrimonial experience." Pa.Stat.Ann. tit. 23, § 102(a)(1) (Purdon, Supp.1986). The record reveals the master considered possible tax implications of his award (Record at 25a). We see no error in the trial court's adoption of the master's recommendation and its treatment of the tax issue.

Husband also claims that the master erred in ignoring the testimony of a loan officer and in accepting wife's expert's valuation of a number of the marital assets. As we have previously stated, the factfinder is free to accept or reject

the testimony of a witness, *Baraff,* 338 Pa.Super. at 210, 487 A.2d at 929. There is no indication in the record that the trial court abused its discretion by adopting the valuations and facts as found by the master.

 Similarly, we find meritless husband's assertion that the equitable distribution award was inequitable because his income would not permit him to meet his expenses and, at the same time, pay his wife $22,500 per year to repurchase her stock in the corporation. Husband claims that although he has numerous real estate assets, his income is limited. We agree with the trial court's analysis of this claim:

> Mr. Diamond claims that he has available income of $27,907 a year, and expenses of about $6,490. The addition of $22,500 in interest costs thus will produce negative expendable income for him, he asserts. We are not persuaded by these figures for they ignore the undistinguishable dual identity of Mr. Diamond as himself and as S.G. Diamond, Inc.

106 Dauph. County 200, 210 (1985).

Husband also contends that the findings regarding his ability to acquire assets in the future and the pre-marital value of the corporation are unsupported by the evidence. We disagree. We find the trial court did not abuse its discretion in not accepting husband's assertion of his "unspectacular past business record". The trial court based its conclusion on testimony relating to the variety and value of the real estate holdings he accumulated to date.

In addition, we find no abuse of discretion in the trial court's assessment of the pre-marital value of husband's corporation. Husband claims the company was worth $60,675 at the time of the marriage, while the trial court set the value at $10,000. The record reveals conflicting evidence regarding the amount in the corporate checking account, husband's contribution to the initial capitalization of the business and the value of the corporate real estate holdings at the time of marriage. Clearly the trial court acted within its discretion.

### III.

Finally, we address wife's claims that the trial court erred in denying her requests for costs, expenses and attorney's fees and alimony. Wife asserts that husband should be held responsible for at least half of her attorney's fees.

In support of this contention, wife argues that her high legal costs are due in part to dilatory and obdurate conduct of husband's counsel. Although she attributes high legal fees to husband's discovery delays, the court properly attributed the legal fees to the complex nature of the case.

The wife also argues that under the equitable distribution award, husband retains substantial separate property. However, counsel fees are not "to be awarded to either spouse automatically.... Actual need must be shown in order to justify an award ... so that both parties are placed 'on a par' in defending their rights." *Dech,* 342 Pa.Super. at 23, 492 A.2d at 44; *citing Hoover v. Hoover,* 288 Pa.Super. 159, 161–62, 431 A.2d 337, 338 (1981). The trial court properly concluded that wife had not established actual need for payment of her counsel fees. We find no abuse of discretion in the trial court's denial of counsel fees. *See Ganong v. Ganong,* 355 Pa.Super. 483, 492, 513 A.2d 1024, 1029 (1986). *Vajda v. Vajda,* 337 Pa.Super. 573, 487 A.2d 409 (1985).

Nor do we believe that the trial court abused its discretion in denying alimony. *Manbeck v. Manbeck,* 339 Pa.Super. 493, 489 A.2d 748 (1985). At the time of hearings before the master, wife was fifty and husband was sixty-four. The trial court found both parties capable of continuing employment. Also as a result of the equitable distribution award, the court found wife would receive in excess of $30,000 annual income. *See* Pa.Stat.Ann. tit. 23, § 501(b) (Purdon, Supp.1986).

We agree with the trial court that the wife can provide for her current needs. The trial court divided the marital property in such a way as to enable the parties to maintain

the standard of living they had enjoyed during the marriage.

Accordingly, we affirm.

WIEAND, J., files concurring opinion.

WIEAND, Judge, concurring:

Helen and Spero Diamond were married in September, 1958. They separated in January, 1975. An action in divorce was filed on June 23, 1981. Hearings were held on various dates between September 27, 1983 and March 2, 1984. The Master filed his report on April 17, 1985. The trial court dismissed exceptions filed to the report and recommendations of the Master and entered a final decree on September 4, 1985. A review of the record reveals that the task of untangling the parties' complicated financial affairs was made even more difficult because of the time intervening between separation and final decree. I agree with the majority that the record discloses no abuse of discretion and that the decree of the learned trial judge must be affirmed.

The majority has ably reviewed the various holdings of the trial court, and I do not intend to review again each individual issue which has been raised by appellant. Because my interpretation of Section 401(e)(4) of the Divorce Code, 23 P.S. § 401(e)(4), varies slightly from that of the majority, however, I would offer the following comments.

Section 401(e)(4) expresses the intent of the legislature that "marital property" available for distribution between the spouses does not include "[p]roperty acquired after separation until the date of divorce." The language of the statute is clear and straightforward. Property acquired by either spouse after separation is not marital property and is not available for distribution between the spouses.

In the instant case, the trial court was called upon to apply this statutory language to improvements made to real estate by virtue of the expenditure of time, labor and capital by one of the parties after separation. With respect

to such improvements, I would hold that they are not "marital property." I would do so regardless of the nature and degree of change effected by the improvement and regardless of the cost of the improvement. Thus, I agree with the majority that a building erected on a tract of land which was unimproved at the time of separation is clearly not marital property. However, I would apply the same rule without equivocation to improvements made to subdivide a previously undeveloped tract. I would hold that the enhanced value of a previously undivided tract of real estate brought about by engineered plot plans and the installation of streets, curbs, and utility lines, is not marital property if the improvements were made by a spouse after separation. Therefore, I am unable to agree with the majority's suggestion, at page 111, that "[t]he increase in value due to subdivision of the acreage and building roads does not amount to the acquisition of a new, distinct asset which must be defined as separate property." In my judgment, the improvements brought about by the subdivision of the Sherwood Forest land after separation were not marital property.

The trial judge determined that the value of the Sherwood Forest tract should, in any event, be determined as of the date of separation, and the majority, interestingly enough, affirms. The majority affirms, however, on the grounds that the trial judge did not abuse his discretion by selecting that date for evaluating the same. See: *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986). I would affirm because, in my judgment, the improvements made by subdividing the tract after separation were not marital property. To the extent that the majority suggests otherwise, I respectfully disagree.

As a general rule, any appreciation in the value of marital property which is brought about by the efforts of one of the spouses after separation is not marital property, and it should not be distributed as such. Such a rule will "have the advantage of allowing the parties to get on with their separate lives as quickly as possible without being required

to calculate the effect of each expenditure of time or capital upon a later decree of distribution." *Sergi v. Sergi, supra,* 351 Pa.Superior Ct. at 601, 506 A.2d at 935 (Concurring Opinion by Wieand, J.).

If the application of such a rule should, in an unusual case, cause inequity, the inequity can be corrected by the manner in which the court distributes assets which do constitute marital property. This, too, the legislature made provision for. Thus, in Section 401(d) of the Divorce Code,[1] the legislature provided that in making distribution of marital property, a court shall consider, inter alia, the following: "(10) [t]he economic circumstances of each party at the time the division of property is to become effective." This power is sufficiently broad to lodge in trial judges the flexibility which will enable them to do economic justice between parties whose marriage is being terminated after a long separation.