570 A.2d 1062

**Joseph J. LICIARDELLO, Sr., Appellant,**

v.

**Concetta P. Valinoto LICIARDELLO, Appellee.**

Superior Court of Pennsylvania.

Argued Jan. 10, 1990.

Filed Feb. 27, 1990.

220

Joseph L. Ditomo, Philadelphia, for appellant.

Mary C. Doherty, Norristown, for appellee.

Before DEL SOLE, MONTEMURO and TAMILIA, JJ.

MONTEMURO, Judge:

This is an appeal from a final decree which divorces the parties, distributes their marital property equally between them, and awards court costs to appellee.

The parties to this case, both 51 years old at the time of hearing, were married in 1955 and separated in 1979. All four of their children are emancipated. Appellant is a Captain of the Philadelphia Police, and operates an auto tag business as well. Appellee has, since a year following separation, been employed as a registered nurse. At the time on the Master's hearing, both parties produced approximately equivalent earnings, appellant's being $37,000 and appellee's $36,000 per year, although in appellant's case, the figures were based on his former rank of Lieutenant.[1] Appellant apparently enjoys good health, although he is undergoing treatment for hypertension; appellee is subject to anemia and both cardiac and gynecological problems which have periodically compelled her absence from work.

The parties jointly own several pieces of real estate. Of the two residential parcels, one has since separation been in the exclusive possession of appellant. This property, located at 7028 Elmwood Ave., contains two stories, the bottom of which houses appellant's auto tag business, and the second appellant's living quarters. Appellee occupies another residential property at 6549 Grays Avenue, herself living in the ground floor unit, and renting the second floor to a tenant whose rent is remitted to appellant. Both properties are covered by a single blanket mortgage payment of $397 per month paid by appellant, who also pays for water and sewer service to appellee's residence. Neither party pays the other rent.

It is the valuation of these properties, and the credit given for appellant's expenditures on their behalf, which are now contested by appellant. In addition he challenges the

---

1. There was no specific value assigned to appellant's business, his second source of income. At hearing appellant testified that his earning from the auto tag concern was between $4,000 and $5,000 for the year 1985.

inclusion among marital assets of a property in Brigantine, New Jersey purchased by the parties in 1976. As originally acquired, the New Jersey property consisted of a house and a lot, the latter of which was purchased in the name of the parties' son, Joseph Jr. The house was sold in 1979, and after sustained litigation, a variance to allow construction on the lot, which was undersized, was obtained. During the course of the legal process, Joseph Jr. conveyed the property to appellant for $1; appellant was eventually granted the desired building permit, and erected a house on the lot. He now argues that the value assigned to this property by the court was erroneous.

Appellant also presents us with claims of error as to the methods of valuation and of distribution of his pension, and the award of court costs to appellee. We will address all of his claims seriatim.

We preface our treatment of appellant's claims by reiterating the applicable standard of review.

In assessing the propriety of a marital property distribution scheme, our standard of review is whether the trial court, by misapplication of the law, or failure to follow proper legal procedure, abused its discretion. *Johnson v. Johnson*, 365 Pa.Super. 409, 529 A.2d 1123 (1987); *Thomson v. Thomson*, 359 Pa.Super. 540, 519 A.2d 483 (1986); *Ganong v. Ganong*, 355 Pa.Super. 483, 513 A.2d 1024 (1986); *Sergi v. Sergi*, 351 Pa.Super. 588, 506 A.2d 928 (1986); *King v. King*, 332 Pa.Super. 526, 481 A.2d 913 (1984). Moreover, "an abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *Sergi, supra,* 351 Pa.Super at 591, 506 A.2d 930, *citing Braderman v. Braderman,* 339 Pa.Super. 185, 190, 488 A.2d 613, 615 (1985). Specifically, we measure the circumstances of the case, and the conclusions drawn by the trial court therefrom. against the provisions of 23 P.S. § 401(d), and the avowed objectives of the Divorce Code, that is, to "effectuate economic justice between [the] parties ... and insure a fair and just

determination of their property rights." 23 P.S. § 102(a)(6).

*Hutnik v. Hutnik,* 369 Pa.Super. 263, 266–7, 535 A.2d 151, 152 (1987).

■ Appellant claims that the trial court erred in including the Brigantine realty among those items termed marital assets, arguing that the property was a gift for the use of the parties' sons, a purpose demonstrated by its having been titled in the name of Joseph Jr. The trial court found that Joseph Jr. was in fact a straw party, and that the purchase by and conveyance to appellant of the lot was simply the culmination of what had originally been intended when the property was acquired, defining it as a marital asset despite the title. In so concluding, the court relied on *Wolf v. Wolf,* 356 Pa.Super. 365, 514 A.2d 901 (1986). There a panel of this court found that under the doctrine of resulting trusts, a wife in a divorce action was not precluded from a claim on property purchased with marital funds for the benefit of the parties but titled in the names of her in-laws. Appellee herein testified that although she had no knowledge of why the title to the property was split, she had understood from the outset that the lot had been purchased for the use of herself and appellant, not the children. Since the court found appellee's testimony credible, the analogue to *Wolf* is both obvious and dispositive.

■ Appellant also argues that the values assigned by the court to all of the realty at issue between the parties, including the Brigantine property, were erroneous. His claim is grounded on the theory that since *Sutliff v. Sutliff,* 518 Pa. 378, 543 A.2d 534 (1988), which requires property valuation as of distribution rather than as of separation, was dated subsequent to the filing of his brief, its principles are inapplicable.

Even were appellant's arguments as to retroactivity more cogent, he fails to persuade. The law current at the time appellant filed his brief was clearly stated by this court in *Diamond v. Diamond,* 360 Pa.Super. 101, 519 A.2d 1012

(1987), *allocatur denied,* 516 Pa. 633, 533 A.2d 92 (1987), which left to the trial court's discretion the choice of a valuation date, specifically so that economic justice, which is the objective of the Divorce Code, could be achieved. Because of the two year hiatus between the Master's hearing and review by the trial court, submission of new appraisals of the contested property was requested within 45 days by order dated April 22, 1988. Appellant neither complied with the order, nor protested its entry. *Sutliff,* as appellant accurately points out, was filed June 1, 1988, before the due date of the order. By his inaction,[2] appellant therefore not only intentionally failed to respond to the requirements of law either actually or arguably contemporary with his case, but in the process waived his right to argue now that the trial court erred in following that law.[3]

The valuation and mode of distribution of appellant's pension provides another grounds for complaint, and here too appellant seems determined to disregard the applicable case law. Appellant is adamant that his pension must be valued at time of separation for purposes of equitable distribution, and having failed to select this date, the trial court erred in the figure it placed upon appellant's pension. While appellant is in general correct, *Braderman v. Braderman, supra,* there is an exception to the blanket rule he would have us apply. In *Morschhauser v. Morschhauser,* 357 Pa.Super. 339, 516 A.2d 10 (1986), we held that "where a plan has vested and value increases aside from contribution of the parties, beyond the date of separation," *id.,* 357 Pa.Superior Ct. at 334–5, 516 A.2d 12–13, the increase is

2. Appellant's substantive arguments are similarly without merit. For example, he states in his brief that the Elmwood property has lost value because it is in a declining commercial district, and his hearing testimony indicated that the property was worthless. However, both the report submitted jointly by the parties at the time of the Master's hearing, and the updated appraisal submitted by appellee indicate exactly the opposite: that the area is stable, and actually increasing in value due to the advent of a shopping center less than one block from appellant's premises.

3. We note that following *Diamond,* the trial court excluded appellant's post separation improvements to the property from its assigned valuation.

marital property. *See, Hutnik v. Hutnik,* 369 Pa.Super. 263, 269, 535 A.2d 151, 154 (1987). There is no argument that appellant's plan is in fact vested. The *Braderman* court itself noted that "the vast majority of jurisdictions hold that vested, unmatured retirement benefits are marital property," *id.,* 339 Pa.Superior Ct. at 193, 488 A.2d 616, and Pennsylvania does not dissent from this view. The trial court was therefore correct in its choice of both the time of evaluation of appellant's pension, and the value assigned.

■ Appellant's claim that the trial court erred in selecting the immediate offset method of distribution is grounded on the assertion that he does not have the cash available to make the initial $21,000 payment offsetting his share of the pension. The trial court found appellant's plea of impecuniousness unpersuasive as he had a larger sum of cash than the offset readily available for other purposes ($64,000 to build the house at Brigantine), and the balance of the offset, $50,000, is deferred, to be paid in installments over a fifteen year period. We see no reason to fault the court's conclusion. *See generally, Hutnik v. Hutnik, supra.*

■ It is also argued that the court erred when it denied appellant credit for one half the mortgage payments made on the residential properties between separation and entry of the decree. Here again the trial court was unimpressed by appellant's credibility. Although appellant was willing to concede that the supposed credits should be reduced by the rents he received from the rental unit in the Gray's Avenue property, he never reported the rental payments, which he now claims to have been $12,000 for a ten year period, on his income tax. The amount thus received, which appellant conceded and the trial court found to have been less than a normal rental value, was nevertheless approximately sufficient to cover the mortgage portion attributable to that property. Moreover, appellant took all of the available mortgage interest deduction. Further, at the time of separation, when there was great disparity between the parties' incomes, since appellee was a full-time nursing student, appellant apparently agreed to forego rental pay-

ments from appellee in exchange for her agreement not to seek spousal support. Under these circumstances, we can perceive no error in the court's decision as to what credits appellant should now receive.

Finally, appellant contends that court costs should not have been awarded to appellee based on what he claims is appellee's higher income, and his own sacrifices in paying the mortgage and declining to insist that appellee pay rent. We have stated that the award of fees and costs will be reversed only for abuse of the trial court's discretion. *Campbell v. Campbell*, 357 Pa.Super. 483, 516 A.2d 363 (1986), *allocatur denied* 515 Pa. 598, 528 A.2d 955 (1987). Herein the court concluded that because appellant had already deposited the required sum, and therefore need not make any new expenditures, and because appellee's economic parity was of relatively recent vintage and derived not at all from appellant's assistance, she was due greater consideration. As counsel fees were not included in this award, we agree with the trial court's determination.

Decree affirmed.